IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 8:07CR395 |
| ) | |
| vs. ) | |
| ) | REPORT AND |
| ROMANDO MORSE, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

The defendant's Amended Motion to Suppress (#20) was heard on February 20, 2008. The Transcript of the hearing (#26) was filed on March 4, 2008, at which time the motion was deemed submitted.

The defendant moves the court for an order suppressing statements he made to Omaha police officers and any evidence seized from the his person on August 31, 2007. The defendant grounds his motion on law enforcement's failure to advise him of his rights prior to questioning, in violation of *United States v. Miranda*, 384 U.S. 436 (1966), and the Fourth and Fifth Amendments of the Constitution of the United States. The defendant also alleges law enforcement conducted an unlawful pat-down search of his person, in violation of his Fourth Amendment rights. The government alleges the search was valid under *New York v. Belton*, 453 U.S. 454, 460 (1981), and the questioning was permissible under *Berkemer v. McCarty*, 468 U.S. 420 (1984).

For the reasons discussed herein, I recommend that the defendant's motion be granted.

### FACTUAL BACKGROUND

Gerald D. Baggett testified he is a 21-year veteran of the Omaha police department, currently serving as a sergeant/command officer with the South Gang Suppression Unit. On August 31, 2007 he was on selective patrol in the Northeast precinct with his partner, Officer

Frank Platt, in an unmarked Chevy Impala. He and Platt were dressed in gang raid vests which identified them as police on the front and gang unit on the back. At approximately 7:00 p.m., Baggett observed a brown 1993 Lincoln Continental with several air fresheners hanging from the rearview mirror. Believing the air fresheners obstructed the view from the vehicle, in violation of the traffic laws of the state of Nebraska (7:1-8), Baggett activated the cruiser lights and siren. The Continental stopped in the lot of the Kum and Go at 30th and Lake (7:15-22).

Baggett testified that as Platt approached the driver's side, he approached the passenger side. Baggett observed Platt speak with the driver and heard the driver, who was later identified as Damione Haley, volunteer that he was a suspended driver (7:23-8:25). As Platt spoke with the driver, Baggett talked with the passenger and asked for identification. While Baggett could not remember whether or not the passenger produced ID, he did remember the passenger identified himself as Romando Morse, and he gave Baggett his date of birth. Baggett noted Morse was cooperative. While Platt conducted a records check of the driver and Morse, Baggett engaged Morse in small talk (9:7-10:1).

After the driver's suspension was confirmed, Baggett advised Morse that the police were going to search the car incident to the arrest of the driver and asked Morse to exit the vehicle. After Morse exited the vehicle, Baggett advised him that he was going to conduct a pat-down search. Baggett asked Morse if he had anything on him that Baggett should know about (10:2-16). Morse told Baggett he did have something that Baggett should be aware of, crack cocaine in his pocket (10:13-11:4). Baggett asked Morse which pocket and Morse responded, "that one." Baggett then patted the indicated pocket stating, "right there?" Morse responded, "yes." Baggett advised Morse he was under arrest and told him he was going to remove the crack cocaine. Baggett then asked if there was anything else that would poke him or be a danger to him and Morse responded, "no." Baggett testified that during his contact with Morse,

-2-

that no bad words or ill was expressed and that Morse was very polite and very congenial (12:1-7). Baggett also noted the stop occurred during daylight (12:8-12).

On cross-examination Baggett testified that as Platt removed the driver Haley from the vehicle, he could not recall whether Haley was handcuffed but he did recall Platt telling Haley that he was under arrest for driving under suspension (13:6-14). Baggett admitted Haley was never arrested or booked into jail, but was cited and released (13:15-22).

On cross-examination Baggett stated that his reason for pat-searching Morse was that he didn't really have to pat search him, but that he generally pats down a good portion of the people he comes into contact with who are removed from a car out of which someone was arrested (14:9-15). Baggett admitted that the stop of the vehicle was not based on a violent crime and he had no reason to believe that Haley was armed or dangerous (15:1-5). Morse was told to exit the vehicle and was told he would be free to leave as soon as they were done with the driver and everything was taken care of (16:9-11). Had Morse tried to walk away, Baggett "probably would have stopped him until we got a ... records check back on him. And at that point he would have been free to go." (16:9-15).

Romando C. Morse testified that he was a passenger in a car driven by Haley when it was pulled over by Baggett and Platt. Morse testified that after the vehicle stopped and after Haley was pulled from the vehicle, he provided his identification to Baggett, who walked back to the patrol car for a few minutes before returning and asking him to step out of the car (17:16-22). Morse noted that Baggett then told him to put his hands on the car and Baggett began a pat-down search. Morse testified that as Baggett patted him down, Baggett put his hands on the right cargo pocket of Morse's pants and asked if Morse had a little weed in the pocket (18:11-19). Morse responded, "no, sir, crack cocaine." (18:25-19:3). Morse stated that he did not feel free to leave at any point during his contact with Baggett (18:1-10).

On cross-examination Morse testified he has been previously convicted of a felony (19:8-11).

## LEGAL ANALYSIS

During closing statements, counsel for the United States argued that no pat-down search actually occurred, and that, pursuant to *Brendlin v. California*, 127 S. Ct. 2400 (2007), Morse was legally detained for the purposes of the traffic stop until it was completed; however, counsel denied that Morse was "in custody." It is the government's position that Morse's admission that he had crack cocaine in his pocket provided the probable cause for Morse's arrest and the search of his person.

In *Brendlin v. California*, the Supreme Court reaffirmed its prior rulings that "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied." 127 S. Ct. at 2405 (internal citations and quotations omitted). In the case of a passenger in a traffic stop, the question of whether a Fourth Amendment seizure occurred is resolved by asking whether a reasonable person in the passenger's position when the car stopped would have believed himself free to terminate the encounter between the police and himself. *Id.* at 2406. "We think that in these circumstances any reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car was free to depart without police permission." *Id.* at 2406-2407. In other words, a traffic stop does subject a passenger, as well as the driver, to Fourth Amendment seizure. *See United States v. Sanders*, 510 F.3d 788, 790-91 (8th Cir. 2007).

"A *Miranda* warning must precede any custodial interrogation. A custodial interrogation involves questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *United States v. Chamberlain*, 163 F.3d 499, 502 (8th Cir. 1999) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). "Interrogation in the *Miranda* context refers to express questioning and to words or conduct that officers should know is 'reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Briones*, 390 F.3d 610, 612 (8th Cir. 2004) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). "*Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." *Butzin v. Wood*, 886 F.2d 1016, 1018 (8th Cir. 1989) (quotation omitted).

Based on the decision in *Brendlin v. California* and Officer Baggett's admission on cross-examination that, had Morse tried to walk away from the scene of the traffic stop, Baggett probably would have stopped him for a records check[1], the court finds that Morse was "in custody" when Baggett announced his intention to conduct a pat-down search and asked Morse if he had anything on him that Baggett should know about. This question was not in any way related to the traffic stop. Nor was Baggett's inquiry limited to items which could cause an injury or pose a safety hazard, but encompassed "anything" that would be of interest to a police officer. Considering the breadth of the question, the court is not persuaded that any "public safety exception" to the *Miranda* rule should be applied in this instance. This was the type of question a trained police officer should know was reasonably likely to elicit an incriminating response from the suspect. Only after Morse replied that he had crack cocaine in his pocket,

---

[1]The court also finds credible the defendant's testimony that he did not feel he was free to leave when the officer asked him to step out of the vehicle (17:21-18:7).

and identified the pocket, did Officer Baggett ask whether there was anything else that would poke him or be a danger.

The court finds that Morse's statement that he had crack cocaine in his pocket was the result of custodial interrogation. Since Morse was not advised of his *Miranda* rights, and his arrest and the seizure of the crack cocaine were effected based solely on the information obtained during an illegal interrogation, the statement and the physical evidence must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471 (1963).

The court has considered the possibility that the crack cocaine may have been discovered during a pat-down search of the defendant. Assuming (without deciding) that such a search occurred, the government has not shown that a pat-down search was permitted under the Fourth Amendment in this case.

Under *Terry v. Ohio*, 392 U.S. 1 (1968), an officer may conduct a protective search for weapons if the officer has an articulable suspicion that a suspect is armed and dangerous. The validity of a *Terry* search does not depend upon whether the officer actually fears the suspect is dangerous; the search is valid "if a hypothetical officer in the same circumstances could reasonably believe the suspect is dangerous." *United States v. Rowland*, 341 F.3d 774, 783 (8th Cir.), *cert. denied*, 540 U.S. 1093 (2003). Here, the arresting officer candidly admitted that he had no reason to believe Morse personally was armed or dangerous, but it was his general practice to pat down a good portion of the people he encounters who are removed from a car out of which someone was arrested. The United States has taken the position that no protective search ever occurred, and there is no proof that a hypothetical officer in the same circumstances could reasonably have believed that Morse was dangerous.

## RECOMMENDATION

For the reasons discussed above,

**IT IS RECOMMENDED** that the defendant's Amended Motion to Suppress (#20) be granted.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing an "Objection to Report and Recommendation" within ten (10) business days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.

**DATED March 25, 2008.**

        **BY THE COURT:**

        s/ F.A. Gossett
        **United States Magistrate Judge**